**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x

In re:

BRADLEY C. REIFLER,

             Debtor.

------------------------------------------------------------------x

Chapter 7

Case No. 17-35075 (KYP)

## MEMORANDUM DECISION AND ORDER DENYING WITHOUT PREJUDICE CHAPTER 7 TRUSTEE'S MOTION TO ABANDON THE BANKRUPTCY ESTATE'S INTEREST IN FOREFRONT PARTNERS, LLC

**APPEARANCES:**

O'TOOLE & O'TOOLE PLLC
*Counsel to the Chapter 7 Trustee*
2 Depot Plaza, Suite 2E
Bedford Hills, NY 10507
By:    Andrew D. O'Toole, Esq.
         Marianne T. O'Toole, Esq.
            Of Counsel

GOETZ PLATZER LLP
*Co-counsel to Rodney Omanoff*
One Penn Plaza, Suite 3100
New York, NY 11019
By:    Clifford A. Katz, Esq.
            Of Counsel

CATAFAGO FINI LLP
*Co-counsel to Rodney Omanoff*
60 East 42nd Street, 47th Floor
New York, NY 10165
By:    Tom M. Fini, Esq.
            Of Counsel

BOWLES & JOHNSON PLLC
*Counsel to Plaintiffs in the State Court Action*
14 Wall Street, 20th Floor
New York, NY 10005
By:    David K. Bowles, Esq.
            Of Counsel

SQUIRE PATTON BOGGS (US) LLP
*Counsel to NC Mutual Life Insurance Co.*
1120 Avenue of the Americas, 13th Floor
New York, NY 10036
By:     Norman N. Kinel, Esq.
                Of Counsel

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

Chapter 7 debtor Bradley C. Reifler ("Reifler") was an investment advisor who defrauded investors by misappropriating their investments through an entity called Forefront Partners, LLC ("Forefront Partners") and related "Forefront" entities.  Reifler pled guilty to wire fraud, he was sentenced to a five-year prison term, and the United States obtained a forfeiture judgment in excess of $20 million against Reifler.

Shortly after filing bankruptcy (but prior to his conviction), Reifler caused Forefront Partners and related entities to file a derivative action in state court against former business partner Rodney Omanoff ("Omanoff") and others alleging, among other things, that Omanoff created a competing company and misappropriated corporate opportunities.  In December 2023, a judgment was entered against Omanoff in excess of $36.7 million ("State Court Judgment").  The State Court Judgment was vacated on appeal, however, on the basis that Reifler lacked authority to direct the actions of Forefront Partners.  *Talking Capital Windup LLC v. Omanoff*, 233 A.D.3d 518, 519 (N.Y. App. Div. 2024) ("*Talking Capital*"), *leave to appeal dismissed*, 262 N.E.3d 264 (N.Y. 2025).  Instead, Reifler was stripped of his managerial role by filing a bankruptcy petition, and only Reifler's bankruptcy trustee could direct the actions of Forefront

2

Partners by virtue of the bankruptcy estate's ownership of Forefront Partners'
membership interest. *Id.*

The *Talking Capital* ruling sparked a flurry of activity in the state court and in
this Court to determine whether the capacity issue could be remedied. These efforts
have ultimately led to the filing of the instant application by Marianne T. O'Toole, the
Chapter 7 trustee of Reifler's bankruptcy estate ("Trustee"), to abandon the estate's
interest in Forefront Partners ("Abandonment Motion").[1] North Carolina Mutual Life
Insurance Company ("NC Mutual") – a now-defunct insurer who was victimized by
Reifler's fraud – supports the Abandonment Motion.[2] The attorneys who have
represented Forefront Partners and the other plaintiffs in state court ("Counsel") also
support the Abandonment Motion.[3] Omanoff opposes the Abandonment Motion
primarily on the basis that he has offered to purchase the estate's interest in Forefront
Partners for $1.2 million.[4]

For the reasons stated, (i) the Abandonment Motion is DENIED WITHOUT
PREJUDICE, and (ii) the Sur-Reply Motion (defined below) is DENIED AS MOOT.

---

[1]     *See Notice of Proposed Abandonment*, dated July 25, 2025 (ECF Doc. # 425); *Chapter 7 Trustee's
Response to the Objections Filed by Rodney Omanoff and JPMorgan Chase Bank, N.A.*, dated Sept. 25,
2025 ("Trustee Brief") (ECF Doc. # 447); *Declaration of Andrew D. O'Toole*, dated Sept. 25, 2025
("O'Toole Declaration") (ECF Doc. # 447-1). "ECF Doc. # _" refers to documents on the electronic docket
of this bankruptcy case. References to documents filed on the docket of other cases will include the case
name or number.

[2]     *See Response of North Carolina Mutual Life Insurance Company to Trustee's Notice of Proposed
Abandonment and the Objections and Responses Thereto*, dated Sept. 25, 2025 ("NC Mutual Brief") (ECF
Doc. # 446).

[3]     *See Interested Parties Forefront Partners, LLC, Talking Capital Windup LLC, Talking Capital
Partners II, LLC and Talking Capital Partners III, LLC's Statement in Response to Objections to the
Trustee's Notice of Proposed Abandonment*, dated Sept. 23, 2025 ("Counsel Brief") (ECF Doc. # 445).

[4]     *See Objection of Rodney Omanoff to the Trustee's Notice to Abandon the Estate's Membership
Interest in Forefront Partners LLC*, dated Aug. 11, 2025 (ECF Doc. # 430); *Reply of Rodney Omanoff in
Further Support of His Objection to the Trustee's Notice to Abandon the Estate's Membership Interest in
Forefront Partners LLC*, dated Oct. 13, 2025 ("Omanoff Brief") (ECF Doc. # 450).

**JURISDICTION**

This Court has jurisdiction over the matters presented pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*(M-431), dated January 31, 2012 (Preska, C.J.) referring bankruptcy cases and proceedings to the Bankruptcy Judges of the Southern District of New York.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

**BACKGROUND**[5]

**A.     Reifler's Bankruptcy Filing and Denial of Discharge**

Reifler filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on January 20, 2017 ("Petition Date"), and the Trustee was appointed trustee of Reifler's bankruptcy estate.  Shortly after the filing, several parties commenced adversary proceedings in this Court seeking a denial of Reifler's bankruptcy discharge. One such action was brought by NC Mutual.  Prior to the Petition Date, NC Mutual had brought suit in the United States District Court for the Middle District of North Carolina ("North Carolina District Court") against Reifler, the Forefront entities, and others alleging that the defendants engaged in a fraudulent scheme to misappropriate NC Mutual's assets into investments designed to benefit the defendants.  *See N.C. Mut. Life Ins. Co. v. Stamford Brook Capital, LLC, et al.*, Case No. 1:16-cv-01174-CCE-JEP (M.D.N.C.).  Following a breach of a settlement agreement, a confession of judgment was entered against Forefront Partners on October 2, 2017 in the amount of

---

[5]     This section includes references to judicial documents and court records filed on dockets of other cases.  This Court may take judicial notice of such documents and records.  *In re Mirena IUD Prods. Liab. Litig.*, 29 F. Supp. 3d 345, 350 (S.D.N.Y. 2014); *see* FED. R. EVID. 201.

$10,445,273.73.  On November 21, 2024, a consent judgment against Reifler was entered in the amount of $60,966,660.00 plus interest and attorneys' fees.

On May 1, 2017, NC Mutual commenced an action in this Court seeking, among other things, a denial of Reifler's bankruptcy discharge.  *See N.C. Mut. Life Ins. Co. v. Reifler*, Adv. P. No. 17-09016 (CGM).  Reifler intentionally destroyed evidence in that action, this Court sanctioned Reifler by entering a default judgment, and the United States District Court for the Southern District of New York ("New York District Court") affirmed the sanction.  *Reifler v. N.C. Mut. Life Ins. Co.* (*In re Reifler*), Case No. 18-CV-4711 (KMK), 2019 WL 396525, at *9 (S.D.N.Y. Jan. 31, 2019) ("[T]he Bankruptcy Court acted well within its discretion in concluding that Reifler destroyed evidence, that his conduct was sanctionable, and that default judgment was an appropriate sanction.").

The Office of the United States Trustee ("UST") also commenced an action seeking denial of Reifler's bankruptcy discharge alleging that Reifler failed to disclose his interest in numerous assets, failed to preserve books and records, and transferred millions of dollars prepetition without sufficient explanation.  *See Harrington v. Reifler*, Adv. P. No. 17-09030 (CGM).  The UST moved for summary judgment, and this Court granted the UST's motion by order dated November 12, 2018.

Creditor JPMorgan Chase Bank, N.A. ("JPMorgan") also brought an action seeking denial of Reifler's bankruptcy discharge alleging that Reifler transferred and concealed his assets both before and after his bankruptcy filing and made false statements in his bankruptcy schedules.  *See JPMorgan Chase Bank, N.A. v. Reifler*, Adv. P. No. 17-09012 (CGM).  A judgment in favor of JPMorgan was entered by this Court on October 30, 2019.

Based on the judgments entered in these adversary proceedings, Reifler will not receive a discharge of any debts in this bankruptcy case.

**B.      Reifler's Guilty Plea and the SEC Enforcement Action**

On December 1, 2020, Reifler was indicted on four counts of wire fraud and one count of perjury in the North Carolina District Court. *See United States v. Reifler*, Case No. 20-CR-512-CCE (M.D.N.C.) ("Reifler Criminal Case").  Reifler eventually pled guilty to one count of wire fraud, and the factual basis for the plea was that Reifler misappropriated $34 million in funds invested by NC Mutual by (i) using at least $10 million to repay prior investors and pay his company's overhead expenses, (ii) investing another $10 million in his own investment management company, and (iii) placing other funds into unauthorized investments.  (ECF Reifler Criminal Case Doc. # 93 (Government's factual basis for guilty plea).)  Further, to avoid detection by NC Mutual, Reifler (i) provided NC Mutual with fabricated documents in response to inquiries made during audits, and (ii) sent fraudulent agreements purporting to pledge additional collateral securing NC Mutual's investment.  (*Id.*)

On November 7, 2022, the North Carolina District Court entered a judgment against Reifler and sentenced him to a prison term of five years.  (ECF Reifler Criminal Case Doc. # 117.)  The judgment also provided that Reifler must make restitution to NC Mutual in the amount of $20,322,220.00 and appended a copy of the *Order Imposing a Forfeiture Money Judgment*, dated Nov. 3, 2022 ("Forfeiture Judgment") in favor of the United States in the same amount.  (*Id.*)

On March 12, 2020, the Securities and Exchange Commission ("SEC") filed an enforcement action in the United States District Court for the District of Nevada ("Nevada District Court") against Reifler, Forefront Partners, and two other entities.

*See Sec. & Exch. Comm'n v. Reifler, et al.*, Case No. 20-cv-00511-CDS-DJA (D. Nev.)

("SEC Enforcement Action").  The SEC's allegations were similar to those alleged by the

United States in the Reifler Criminal Case.  Reifler eventually settled the case with the

SEC, and the SEC entered a corresponding *Order Making Findings and Imposing*

*Remedial Sanctions Pursuant to Section 203(f) of the Investment Advisers Act of 1940*

on November 20, 2023 ("SEC Order").[6]  Under this order, the SEC found as follows:

> Since 2009, Reifler has served as the founder, chief executive officer, or
> primary principal of a financial services enterprise that included asset
> management, investment banking, and investment advisory services all
> doing business under the name of "Forefront."

(SEC Order at 2.)  The SEC Order enjoined Reifler "from association with any broker,

dealer, investment adviser, municipal securities dealer, municipal advisor, transfer

agent, or nationally recognized statistical rating organization" pursuant to section 203(f)

of the Investment Advisers Act of 1940.  (*Id.*)

On December 1, 2023, the Nevada District Court entered a judgment ("SEC

Enforcement Judgment") enjoining Reifler from violating numerous provisions of the

securities law and participating in the issuance, offer, or sale of any security (except for

his own personal accounts).  (ECF SEC Enforcement Action Doc. # 68.)  The Nevada

District Court also held Reifler, Forefront Partners, and a second Forefront entity jointly

and severally liable for disgorgement in the amount of $9,095,355.00, plus prejudgment

interest of $1,792,775.00.  (*Id.*)

---

[6]     A copy of the SEC Order is available at ECF Doc. # 407-8.

**C.      The State Court Action**

On February 24, 2017 (*i.e.*, one month after the Petition Date but several years before the commencement of the Reifler Criminal Case and SEC Enforcement Action), Reifler caused Forefront Partners and related entities to commence a derivative action in the Supreme Court of the State of New York, County of New York ("State Court") captioned *Talking Capital LLC, et al. v. Omanoff, et al.*, Index No. 650973/2017 ("State Court Action").  The plaintiffs to the State Court Action were (i) Talking Capital LLC, which later became Talking Capital Windup LLC ("Talking Capital"), (ii) Talking Capital's two subsidiaries – Talking Capital Partners II, LLC ("TC II") and Talking Capital Partners III, LLC ("TC III," and collectively with Talking Capital and TC II, the "TC Parties"), and (iii) Forefront Partners, which held Talking Capital's membership interest.  Reifler and Omanoff were business partners and created Talking Capital to provide factor financing to firms in the telecommunications industry.  The plaintiffs alleged that Omanoff and certain other defendants formed a separate company, while simultaneously working for Talking Capital, that engaged in the same business as Talking Capital.  In doing so, the plaintiffs alleged that Omanoff breached the operating agreement, breached his fiduciary duty, misappropriated corporate opportunity, and was unjustly enriched.

The docket of the State Court Action has been highly active in the nine years since its filing and now contains 2,440 entries.  An issue that has been clouding the prosecution of the case has been what effect, if any, Reifler's bankruptcy filing has on the case.  On February 25, 2022, Omanoff commenced an adversary proceeding in this Court (*see Omanoff v. Reifler, et al.*, Adv. P. No. 22-09002 (CGM)) arguing, among other things, that the continued prosecution of the State Court Action was a violation of

8

the automatic stay because the membership interest in Forefront Partners was property of the bankruptcy estate.  The Bankruptcy Court dismissed the action, and the dismissal was affirmed by the New York District Court.  *See Omanoff v. Reifler* (*In re Reifler*), 22-CV-10201 (CS), 2023 WL 5510233 (S.D.N.Y. Aug. 25, 2023) ("*Reifler*").  Citing authorities for the proposition that property (including causes of action) of an LLC is not property of its members, the District Court ruled that the State Court Action did not constitute property of the estate, and its continued prosecution did not violate the automatic stay.  *Reifler*, 2023 WL 5510233, at *5-8.  The District Court further explained that the inclusion of Forefront Partners' membership interest in the bankruptcy estate did not automatically give the Trustee the right to manage Forefront Partners.  *Id.* at *9.  That right belonged to Reifler until the Trustee – by virtue of the bankruptcy estate's holding the membership interest – removed Reifler from his management role.  *Id.*

The State Court Action continued on, and on December 13, 2023, the State Court entered the State Court Judgment in the amount of $36,732,540.87 against (i) Omanoff, (ii) Omanoff America Telecom, LLC, (iii) Contacts and Contracts Inc., and (iv) Omanoff America LLC (collectively, the "Omanoff Parties").  (ECF State Court Action Doc. # 1423.)  The Omanoff Parties appealed, and the New York Supreme Court, Appellate Division, First Department ("Appellate Division") vacated the judgment by issuing the *Talking Capital* decision on December 12, 2024.  The Appellate Division noted that the State Court erred by previously granting a motion to remove Forefront Partners as plaintiff so that the TC Parties could prosecute the action directly.  *Talking Capital*, 233 A.D.3d at 519.  Under the terms of the operating agreements, Reifler lost his managerial role in Forefront Partners and the TC Parties when he filed a bankruptcy petition.  *Id.*

Therefore, Reifler's post-Petition-Date written consents purporting to amend the operating agreements to permit him to remain on as manager were without legal effect. *Id.* Reifler's bankruptcy estate held the membership interest in Forefront Partners, and only the Trustee, or her designee, could direct the actions of Forefront Partners. *Id.*

## D.   Prior Motion to Compel Abandonment

Two months after the Appellate Division vacated the State Court Judgment for lack of capacity, Counsel filed a motion in this Court to compel the Trustee to abandon the bankruptcy estate's interest in Forefront Partners so that the capacity issue in the State Court Action could be remedied. (ECF Doc. # 388.) The Trustee (ECF Doc. ## 407, 408) and Omanoff (ECF Doc. ## 403, 404) opposed Counsel's motion. NC Mutual agreed with Counsel that actions should be taken to preserve the State Court Judgment but argued that, instead of Reifler, the Court or the Trustee should appoint Mr. Don Roof – a representative of the North Carolina Commissioner of Insurance, who is already administering Reifler-related assets of Forefront Investment Trust – as the new manager of Forefront Partners. (ECF Doc. # 405.)

The Court heard oral argument and issued a bench ruling denying Counsel's motion on April 24, 2025. (ECF Doc. # 416 (hearing transcript).) The Court stressed that the Trustee owes fiduciary duties to the Reifler bankruptcy estate and its creditors but does not owe such duties to the stakeholders of Forefront Partners or the TC Parties. Importantly, the Trustee was still considering multiple options for the disposition of the estate's interest in Forefront Partners and disclosed that she was in discussions with representatives of Omanoff on a potential sale of the interest. The Court encouraged all parties who had an interest in the disposition of State Court Action to have discussions

10

with the Trustee to aid in the exercise of her fiduciary duty with respect to the estate's interest in Forefront Partners.

The Trustee and Omanoff continued negotiating a potential sale of the estate's interest in Forefront Partners, but the parties ultimately failed to come to an agreement.

## E.      The Instant Abandonment Motion

On July 25, 2025, the Trustee filed a notice of abandonment (*see* ECF Doc. # 425) of the bankruptcy estate's interest in Forefront Partners and filed her brief in support of the Abandonment Motion two months later.  (*See* Trustee Brief.)  The Trustee provided a long list of reasons in support of her motion (*see id.* ¶ 34), which can be divided into four categories.  First, she argues that the bankruptcy estate's interest in Forefront Partners is of questionable value because (i) it is unclear if the estate holds any interest given the Debtor's contradictory testimony and representations about his pre-petition interest in Forefront Partners, (ii) the SEC and NC Mutual have sizeable judgments against Forefront Partners, (iii) there could be difficulty in collecting the State Court Judgment because of Omanoff's documented efforts in the State Court Action to fraudulently transfer his assets abroad, and (iv) the Government might exercise its rights under the Forfeiture Judgment before funds flow to Reifler's bankruptcy estate. Second, the Trustee argues that the asset is burdensome because litigation will continue in the State Court Action even if she appoints a manager for Forefront Partners.  *See, e.g.*, *Talking Capital*, 233 A.D.3d at 520 (permitting the Omanoff Parties to litigate their unclean hands defense against Forefront Partners on remand).  Third, the Trustee states that there may be exposure to the bankruptcy estate by assuming control over an entity that was previously controlled by a convicted felon.  Fourth, the Trustee contends that the sale of the membership interest to Omanoff is not viable because, among other

things, (i) it was unclear whether Omanoff is actually interested in buying the

membership interest, (ii) any motion to approve such sale in this Court would be heavily

litigated, and (iii) there is a serious question of whether Omanoff could fund the

purchase given the restraining notices served by Counsel and outstanding criminal

contempt orders and arrest warrant against Omanoff in the State Court Action. *See*

*Talking Capital Windup LLC v. Omanoff*, Index No. 650973/2017, 2025 WL 1994467,

at *1-3 (N.Y. Sup. Ct. July 17, 2025) (noting that Omanoff did not seek to vacate existing

criminal contempt orders and criminal contempt arrest warrant, and ruling that the

vacatur of the State Court Judgment by the *Talking Capital* decision did not result in

the vacatur of all pre-existing civil contempt orders issued by the State Court); *Talking*

*Capital Windup LLC v. Omanoff*, Index No. 650973/2017, 2025 WL 2601884, at *2

(N.Y. Sup. Ct. Sept. 5, 2025) (denying plaintiffs' motion for pre-judgment attachment

and noting that Omanoff's assets have "already left New York"); *see also id.* at *2 n. 1

(noting that Omanoff's misrepresentation about his assets "is more properly considered

when determining Omanoff's sentence for his criminal contempt").

NC Mutual and Counsel support the Abandonment Motion. (*See* NC Mutual

Brief and Counsel Brief.) Omanoff opposes the motion arguing, among other things,

that he is willing to purchase the Forefront Partners membership interest for $1.2

million on the terms originally offered by the Trustee. (*See* Omanoff Brief.) The Court

heard oral argument on October 23, 2025 and took the matter under advisement.

## DISCUSSION

### A.      Standards Governing the Abandonment Motion

Section 554(a) of the Bankruptcy Code allows a trustee to "abandon any property

of the estate that is burdensome to the estate or that is of inconsequential value and

benefit to the estate." 11 U.S.C. § 554(a). "A trustee's decision to abandon property of the estate is within the trustee's discretion, and that decision is bounded only by the discretion of the court." *In re DiTech Holding Corp.*, Case No. 19-10412 (JLG), 2023 WL 3638049, at *7 (Bankr. S.D.N.Y. May 24, 2023) (quoting *In re Interpictures, Inc.*, 168 B.R. 526, 535 (Bankr. E.D.N.Y. 1994)) (internal quotation marks omitted); *accord In re Culligan Ltd.*, Case No. 20-12192 (JLG), 2023 WL 5942498, at *12 (Bankr. S.D.N.Y. Sept. 12, 2023) (noting that courts "generally defer to a Trustee's exercise of business judgment in determining whether to abandon an estate asset") (quotation omitted). The bankruptcy trustee bears the burden under section 554(a) to show that she "has exercised sound business judgment in making the determination to abandon." *DiTech*, 2023 WL 3638049, at *8 (quoting *In re Cult Awareness Network, Inc.*, 205 B.R. 575, 579 (Bankr. N.D. Ill. 1997)).

Section 554(a) is written in the disjunctive and is satisfied if the trustee demonstrates that the property is either "burdensome to the estate" or is "of inconsequential value and benefit to the estate." "Abandonment is not a process to be taken lightly. Once an asset is abandoned, it is removed from the bankruptcy estate, and this removal is irrevocable except in very limited circumstances." *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 123 (2d Cir. 2008), *cert. denied*, 555 U.S. 1213 (2009).

## B. Analysis

### 1. Abandonment is Premature

It is premature to conclude that the membership interest in Forefront Partners is either burdensome to the estate or of inconsequential value and benefit to the estate.

13

The face value of the State Court Judgment is in excess of $36.7 million.[7]  Although the Appellate Division vacated the judgment, the vacatur was based on a lack of authority on the part of Reifler to execute written consents on behalf of Forefront Partners and the TC Parties to allow him to continue as manager of those entities.  *Talking Capital*, 233 A.D.3d at 519.  Reifler ceased to be manager when he filed his bankruptcy petition, and only the Trustee, or her designee, had the authority to execute such written consents.  *Id*.  Thus, the Trustee's appointment of a manager for Forefront Partners and the TC Parties would likely cure the capacity issue.[8]

If the $36.7 million State Court Judgment was reinstated,[9] it is possible that proceeds could eventually flow to Reifler's bankruptcy estate.  As outlined above, the bankruptcy estate owns the membership interest in Forefront Partners, which, in turn, owns the membership interest in Talking Capital, which, in turn, owns the membership interests in TC II and TC III.  It is unclear whether there are any creditors of the TC Parties.  There are at least two large creditors of Forefront Partners: (i) NC Mutual has a confession of judgment in excess of $10.4 million from its civil fraud suit in North Carolina District Court, and (ii) the SEC has a judgment in excess of $10.8 million from the SEC Enforcement Action.  If the plaintiffs in the State Court Action are able to recover an amount anywhere close to the face amount of the judgment, then the Trustee

---

[7]     The continuing accrual of statutory interest could increase the award.

[8]     To be clear, this Court is not ruling on the capacity issue, as it is a matter for resolution in the State Court Action.

[9]     As mentioned *supra*, the Omanoff Parties can still litigate its unclean hands defense against Forefront Partners.  *Talking Capital*, 233 A.D.3d at 520.

would be entitled to the surplus – after satisfaction of claims against Forefront Partners – on account of the Forefront Partners membership interest.

The Trustee questions whether the estate has any interest in Forefront Partners given Reifler's history of conflicting and contradictory statements about his pre-petition interest in Forefront Partners. However, both the New York District Court and Appellate Division have now ruled that the membership interest in Forefront Partners belongs to the bankruptcy estate, and the Trustee has the power to appoint a manager for Forefront Partners. *Reifler*, 2023 WL 5510233, at *9 ("Reifler's bankruptcy estate included Reifler's ownership interest in [Forefront Partners], along with other rights – including the ability to designate or remove [Forefront Partners'] managers . . . ."); *Talking Capital*, 233 A.D.3d at 519 (stating that the membership interest in Forefront Partners had "passed to the bankruptcy estate," and no one "apart from the bankruptcy trustee or [her] designees, had the authority to adopt written consents on behalf of" Forefront Partners).[10] The bankruptcy estate's ownership of the membership interest in Forefront Partners is now "law of the case," *see Perez v. Terrestar Corp.* (*In re Terrestar Corp.*), 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases" for purposes of the "law of the case" doctrine.), and might also be subject to preclusion doctrines.

---

[10]   The Appellate Division disagreed with the New York District Court on the issue of whether Reifler retained his role as manager of Forefront Partners after filing his bankruptcy petition. *Compare Reifler*, 2023 WL 5510233, at *9 (Reifler retained manager role because the managerial function did not pass to the bankruptcy estate) *with Talking Capital*, 233 A.D.3d at 519 (Reifler lost his managerial role under the terms of the operating agreement by filing a bankruptcy petition).

15

The Trustee's concern about the burden to the estate of becoming entrenched in the State Court Action can be mitigated by the appointment of a third-party manager for Forefront Partners and the TC Parties. By doing so, the manager, rather than the Trustee, would be primarily responsible for overseeing the State Court Action. As mentioned above, NC Mutual has previously suggested the appointment of Mr. Don Roof as manager. (ECF Doc. # 405 ¶¶ 29-34.) Mr. Roof is a representative of the North Carolina Commissioner of Insurance and has already been tasked with administering the assets of another "Forefront" entity. (*Id*.) The Court suggests (but does not direct) that the Trustee consider the appointment of Mr. Roof as manager.

The issues raised by the Trustee regarding a potential sale of the Forefront Partners membership interest to Omanoff do not conclusively support abandonment at this juncture. As discussed herein, a sale of the membership interest may not be the sole means of extracting value from the interest. By appointing a manager for Forefront Partners, it is possible that value from the State Court Action will eventually flow to the bankruptcy estate. The latter is an option the Trustee should explore.

The remainder of the Trustee's arguments focus on events which might occur in the future that would decrease or eliminate the value of the asset (*e.g.*, difficulty in collecting the State Court Judgment; litigation risk in the State Court Action; potential exercise of forfeiture right by the Government). The Court does not disagree that future events may ultimately prove the Trustee correct. But the Court cannot make that conclusion based on the circumstances as they exist today. Therefore, the Court concludes that the Trustee has failed to carry her burden under section 554(a) of the Bankruptcy Code.

The Court adds that granting the Abandonment Motion would lead to a wholly inequitable result. A bankruptcy trustee "may only abandon property to a person or entity with a pre-petition possessory interest in the property." *In re Estiatorio Ent. Ltd.*, 669 B.R. 676, 684 (Bankr. S.D.N.Y. 2025) (quotation omitted). Most often, "title to that property reverts back to the debtor." *Edwards v. CGI Grp. Inc.*, 11 Civ. 8611 (AT), 2018 WL 4043142, at *5 (S.D.N.Y Aug. 10, 2018). Reifler's fraudulent actions in this bankruptcy case, including destruction of evidence, have led to judgments denying his discharge. Reifler has made contradictory statements before this Court about his ownership interest in Forefront Partners. Most importantly, Reifler used Forefront Partners to perpetrate a massive fraud against his investors including NC Mutual. He pled guilty to wire fraud and was sentenced to a five-year prison term. His actions led to the entry of the Forfeiture Judgment and the SEC Enforcement Judgment against him. Under these circumstances, it would be unthinkable to return to Reifler the very asset he utilized to commit his crime.

### 2. The Sur-Reply Motion is Moot

After oral argument on the Abandonment Motion, Omanoff filed a motion on November 7, 2025 seeking authorization to file a sur-reply in further opposition to the Abandonment Motion ("Sur-Reply Motion"), and the parties briefed the matter. (ECF Doc. ## 457, 458, 459, 461, 462, 463, 464, 466.) Because the Court is denying the Abandonment Motion, the Sur-Reply Motion is moot.

*[remainder of page intentionally blank]*

17

## ORDER

For the reasons stated,[11] it is

**ORDERED** that the Abandonment Motion is DENIED WITHOUT PREJUDICE; and it is further

**ORDERED** that the Sur-Reply Motion is DENIED AS MOOT; and it is further

**ORDERED** that the Trustee shall appear for a status conference on Thursday, June 11, 2026 at 10:00 a.m. (ET) via Zoom for Government to update the Court as to any developments with respect to the bankruptcy estate's interest in Forefront Partners.

**Dated: May 11, 2026**
**Poughkeepsie, New York**



**/s/ Kyu Y. Paek**
_____
**Hon. Kyu Y. Paek**
**U.S. Bankruptcy Judge**

---

[11]   Arguments made by the parties but not specifically addressed herein have been considered by the Court and rejected or rendered moot by the Court's ruling.