**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re:

BRADLEY C. REIFLER,

Debtor.

Chapter 7

Case No. 17-35075 (KYP)

-------------------------------------------------------------x

**MEMORANDUM DECISION APPROVING STIPULATION APPOINTING DONALD F. ROOF AS MANAGER OF FOREFRONT PARTNERS, LLC**

**APPEARANCES:**

O'TOOLE + O'TOOLE PLLC
*Counsel to the Chapter 7 Trustee*
2 Depot Plaza, Suite 2E
Bedford Hills, NY 10507
By: Andrew D. O'Toole, Esq.
Marianne T. O'Toole, Esq.
Of Counsel

GOETZ PLATZER LLP
*Co-counsel to Rodney Omanoff*
1325 Avenue of the Americas, 14th Fl.
New York, NY 11019
By: Clifford A. Katz, Esq.
Scott D. Simon, Esq.
Of Counsel

CATAFAGO FINI LLP
*Co-counsel to Rodney Omanoff*
One Grand Central Place, 47th Fl.
New York, NY 10165
By: Tom M. Fini, Esq.
Of Counsel

SQUIRE PATTON BOGGS (US) LLP
*Counsel to NC Mutual Life Insurance Co.*
1120 Avenue of the Americas, 13th Fl.
New York, NY 10036
By: Norman N. Kinel, Esq.
Of Counsel

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

Marianne T. O'Toole ("Trustee"), as Chapter 7 trustee of the bankruptcy estate of Bradley Reifler ("Reifler"), has entered into a stipulation ("Stipulation")[1] to appoint Donald F. Roof ("Roof") as manager of Forefront Partners, LLC ("Forefront Partners") and has presented the Stipulation to be so-ordered by the Court. NC Mutual Life Insurance Co. ("NC Mutual") supports Court approval of the Stipulation,[2] and Rodney Omanoff ("Omanoff") opposes it.[3]

For the reasons stated, the Stipulation is **APPROVED**, and Omanoff's objections are **OVERRULED**.

## BACKGROUND[4]

The instant dispute has a long history and was described in this Court's *Memorandum Decision and Order Denying Without Prejudice Chapter 7 Trustee's Motion to Abandon the Bankruptcy Estate's Interest in Forefront Partners, LLC*, dated

---

1 *See Stipulation and Order Appointing Donald F. Roof as Manager of Forefront Partners LLC*, a copy of which is available at ECF Doc. # 492-1. The Trustee submitted a brief supporting approval of the Stipulation on August 31, 2026 ("Trustee Brief") (ECF Doc. # 499). "ECF Doc. #_" refers to documents filed on the electronic docket of this bankruptcy case.

2 *See North Carolina Mutual Life Insurance Company's Response to Omanoff's Objection to Stipulation*, dated Aug. 31, 2026 ("NC Mutual Brief") (ECF Doc. # 501).

3 *See Objection to Entry of Stipulation and Order Between Chapter 7 Trustee and Donald F. Roof*, dated Aug. 10, 2026 ("Omanoff Brief") (ECF Doc. # 496), and *Reply to the Responses Filed by the Chapter 7 Trustee and North Carolina Mutual Life Insurance Co. to Omanoff's Objection to Entry of Stipulation and Order Between Chapter 7 Trustee and Donald F. Roof*, dated Sept. 4, 2026 ("Omanoff Reply") (ECF Doc. # 503).

4 The Court reviewed the following declarations submitted in connection with the Stipulation: *Declaration of Clifford A. Katz*, dated Aug. 10, 2026 ("Katz Declaration") (ECF Doc. # 496-1), and *Declaration of Marianne T. O'Toole*, dated Aug. 31, 2026 ("Trustee Declaration") (ECF Doc. # 499-1).

May 11, 2026 ("*Decision Denying Abandonment*")[5] (ECF Doc. # 480). The Court assumes familiarity with the *Decision Denying Abandonment* and provides a brief summary for purposes of this decision.

### A. The State Court Action

Reifler was an investment advisor who defrauded investors, including NC Mutual, by misappropriating their investments through his wholly owned company Forefront Partners. Reifler eventually pled guilty to wire fraud and was sentenced to a five-year prison term. A few years before his conviction, Reifler filed a Chapter 7 bankruptcy petition in this Court. Shortly after declaring bankruptcy, Reifler caused Forefront Partners and certain of its subsidiaries to commence a civil action in the Supreme Court of the State of New York, County of New York ("State Court"), against former business partner Omanoff and others, alleging that Omanoff created a competing company and misappropriated corporate opportunities. *See Talking Capital LLC, et al. v. Omanoff, et al.*, Index No. 650973/2017 ("State Court Action").

In December 2023, the State Court entered a judgment in the State Court Action against Omanoff in an amount in excess of $36.7 million ("State Court Judgment"). Omanoff appealed the State Court Judgment to the New York Supreme Court, Appellate Division, First Department ("Appellate Division"), and the Appellate Division vacated the judgment on December 12, 2024. *See Talking Capital Windup LLC v. Omanoff*, 233 A.D.3d 518 (N.Y. App. Div. 2024) ("*Talking Capital*"), *leave to appeal dismissed*, 262 N.E.3d 264 (N.Y. 2025). The Appellate Division ruled that Reifler lost his role as

5 The *Decision Denying Abandonment* is available in the bankruptcy reporter under *In re Reifler*, 678 B.R. 738 (Bankr. S.D.N.Y. 2026).

manager of Forefront Partners and its subsidiaries by filing a bankruptcy petition, and his membership interest in those entities was property of his bankruptcy estate. *Id.* at 519. Thus, only the "bankruptcy trustee or [her] designees" had the authority to act on behalf of Forefront Partners and its subsidiaries. *Id.* The written consents executed by Reifler purportedly allowing him to continue as manager notwithstanding the bankruptcy were invalid. *Id.*

**B. The *Decision Denying Abandonment***

Following the issuance of *Talking Capital*, there were efforts in the State Court and this Court to remedy the capacity issue identified by the Appellate Division. The attorneys who had been representing Forefront Partners and its subsidiaries filed a motion to compel the Trustee to abandon the bankruptcy estate's membership interest in Forefront Partners so that such interest would revert to Reifler. The Trustee opposed that motion, and the Court denied the motion by order dated April 25, 2025. (ECF Doc. # 413.)

The Trustee then filed her own motion to abandon the bankruptcy estate's interest in Forefront Partners. NC Mutual supported the motion, and Omanoff opposed it. On May 11, 2026, the Court denied the Trustee's motion without prejudice by issuing the *Decision Denying Abandonment*. The Court ruled that abandonment of the Forefront Partners interest was premature because "the Trustee's appointment of a manager for Forefront Partners . . . would likely cure the capacity issue" identified by the Appellate Division. *Decision Denying Abandonment* at 14. "If the $36.7 million State Court Judgment was reinstated, it is possible that proceeds could eventually flow to Reifler's bankruptcy estate." *Id.*

In response to the Trustee's concern about becoming entrenched in the State Court Action, the Court suggested the appointment of a third-party manager for Forefront Partners who could oversee the litigation. *Id.* at 16. In a prior proceeding, NC Mutual had suggested the appointment of Roof as manager of Forefront Partners. The Court noted that Roof "is a representative of the North Carolina Commissioner of Insurance and had already been tasked with administering the assets of another 'Forefront' entity." *Id.* Thus, the Court "suggest[ed] (but [did] not direct) that the Trustee consider the appointment of Mr. Roof as manager." *Id.*

The Court added that abandonment would lead to the "wholly inequitable result" of returning control of Forefront Partners to Reifler. *Id.* at 17. Reifler had misappropriated investor assets through Forefront Partners, and "it would be unthinkable to return to Reifler the very asset he utilized to commit his crime." *Id.*

**C. The Stipulation**

On July 14, 2026, the Trustee, Roof, and NC Mutual filed the Stipulation accompanied by a notice of presentment advising that the Stipulation would be presented to the Court for signature on August 17 and that objections to the Stipulation must be filed by August 10. (ECF Doc. # 492.) The Stipulation appoints Roof as manager of Forefront Partners ("Manager") to act in accordance with Forefront Partners' operating agreement ("Operating Agreement")[6] and applicable law. (Stipulation ¶ 2.) Other features of the Stipulation include that:

- NC Mutual shall pay for any compensation, fees, and expenses payable to the Manager, and any professionals retained by the Manager, at no expense to the Trustee or the bankruptcy estate (*id.* ¶ 3);

6 A copy of Operating Agreement is attached as Exhibit 2 to the NC Mutual Brief.

- the Manager shall have no personal liability for fees, expenses, or costs assessed against Forefront Partners (*id.*);
- the Manager shall have full and exclusive authority to operate the business affairs of Forefront Partners including all litigation involving Forefront Partners (*id.* ¶¶ 4, 5);
- the Manager shall provide the Trustee with status reports on a quarterly basis (*id.* ¶ 6);
- the Manager shall be liable only to the extent set forth in the Operating Agreement and applicable law (*id.* ¶ 7);
- the Manager shall not be responsible for the acts or omissions of any prior manager of Forefront Partners (*id.* ¶ 8);
- the Trustee, and the Trustee's retained professionals, shall not be responsible for any acts or omissions of the Manager or any former manager of Forefront Partners (*id.*);
- the Manager may withdraw from his position with or without cause upon application to this Court (*id.* ¶ 9); and
- this Court shall retain exclusive jurisdiction over all matters related to the Stipulation (*id.* ¶ 13).

Omanoff filed a timely objection to the Stipulation. (*See* Omanoff Brief.) Thereafter, the Court entered a scheduling order ("Scheduling Order") allowing interested parties to file responses to the Omanoff Brief and then allowing Omanoff to file a reply to such responses. (ECF Doc. # 497.) The Trustee and NC Mutual filed responses to the Omanoff Brief (*see* Trustee Brief and NC Mutual Brief), Omanoff filed a reply (*see* Omanoff Reply), the Court heard oral argument on September 15, 2026 ("Hearing") and took the matter under advisement.

## DISCUSSION

### A. Applicable Legal Standards

Chapter 7 trustees enjoy a "substantial degree of discretion" when administering a debtor's estate, and "courts will not entertain objections to the trustee's management of the debtor's estate where the trustee's conduct involves her good faith business judgment, is made on a reasonable basis, and is within the scope of the trustee's authority under the Code." *In re Kerner*, 599 B.R. 751, 756 (Bankr. S.D.N.Y. 2019) (citation, alteration, and internal quotation marks omitted).

Matters concerning corporate governance are governed by state law in bankruptcy proceedings. *See Manville Corp. v. Equity Sec. Holders Comm.* (*In re Johns-Manville Corp.*), 801 F.2d 60, 64 (2d Cir. 1986) (shareholders' right to govern their corporation is "a prerogative ordinarily uncompromised by reorganization"); *In re K.G. IM, LLC*, 620 B.R. 469, 482 (Bankr. S.D.N.Y. 2020) ("[T]he Debtors' rights under state law and the applicable operating agreements to alter their management structure postpetition is an appropriate exercise of their governance rights and permissible under the Bankruptcy Code."); *In re Indianapolis Downs, LLC*, 486 B.R. 286, 302 (Bankr. D. Del. 2013) ("It is axiomatic that the commencement of a Chapter 11 case does not suspend or displace non-bankruptcy law and contractual rights regarding corporate governance.").

As Forefront Partners is a Delaware limited liability company, it is governed by the Delaware Limited Liability Company Act. "Delaware law treats limited liability companies as creatures of contract, designed to afford the maximum amount of freedom of contract, private ordering and flexibility to the parties involved." *In re Pack Liquidating, LLC*, 658 B.R. 305, 316 (Bankr. D. Del. 2024) (citation and internal

quotation marks omitted); 6 Del. C. § 18-1101(b) ("It is the policy of this chapter to give the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements.").

**B. The Trustee May Appoint Roof as Manager of Forefront Partners**

The Trustee has the authority to appoint Roof as Manager of Forefront Partners. An LLC can be managed by members or by non-member managers, and the Operating Agreement provided that Forefront Partners would be managed by managers who are appointed by the members. (*See* Operating Agreement, Art. VI.) As the Chapter 7 trustee of Reifler's bankruptcy estate, the Trustee holds the sole membership interest in Forefront Partners. Thus, the Trustee has the power under the Operating Agreement to appoint Roof as Manager of Forefront Partners. *See Decision Denying Abandonment* at 15 (noting that the Appellate Division and the District Court have already held that the Trustee has the power to appoint a manager for Forefront Partners).

Appointment of Roof constitutes the Trustee's exercise of her good faith business judgment. As this Court previously stated, the appointment of a Manager for Forefront Partners would likely cure the capacity issue identified by the Appellate Division and could result in the reinstatement of the $36.7 million State Court Judgment against Omanoff. *Decision Denying Abandonment* at 14-15. As the sole member, the Trustee would be entitled to any surplus recoveries after satisfaction of claims against Forefront Partners. *Id.* The bankruptcy estate will incur no cost for Roof's services because any compensation payable to him, or any professionals retained by him, will be paid by NC Mutual. (Stipulation ¶ 3.) The Trustee and her counsel met with Roof to discuss Roof's qualifications and willingness to serve as Manager. (Trustee Declaration ¶ 4.) Roof

confirmed that he is willing to serve, and the Trustee has decided to appoint Roof to serve as Manager pursuant to the terms set forth in the Stipulation. (*Id.* ¶¶ 5-6.)

Roof is qualified to act as Manager. He is currently the Managing Director at Examination Resources, LLC where he works on receiverships and liquidation proceedings and provides forensic-accounting and asset-recovery services. (*See* Resume of Donald F. Roof.)[7] As the Court previously noted, Roof has already been tasked with administering the assets of another "Forefront" entity.[8] Roof has also been appointed by the North Carolina Commissioner of Insurance to serve as the Special Deputy Receiver to NC Mutual. He has, in all likelihood, been following the State Court Action on account of the sizeable claims NC Mutual has asserted against Forefront Partners as well as Reifler's bankruptcy estate. *See Decision Denying Abandonment* at 4-5 (noting NC Mutual's claim against Forefront Partners in excess of $10.4 million and claim against Reifler in excess of $60.9 million).

Thus, the appointment of Roof is permitted under the Operating Agreement and constitutes a sound exercise of the Trustee's business judgment.

### C. Omanoff's Objections

Omanoff raises a barrage of objections to the Stipulation. The objections fail for two independent reasons: (i) Omanoff lacks standing to object to the Stipulation, and (ii) Omanoff's objections lack merit.

---

[7] Roof's resume is attached as Exhibit 1 to the Trustee Declaration. Before joining Examination Resources, Roof worked with the Georgia Department of Insurance and was the Director of the Insurance and Financial Oversight Division.

[8] Specifically, Roof administered the assets of Forefront Investment Trust.

**1. Standing**

It is important to underscore the procedural posture here. The Stipulation addresses the appointment of a manager for Forefront Partners, an act that the Appellate Division, the District Court, and this Court has recognized is within the Trustee's authority as sole member of Forefront Partners. Omanoff is not a co-member of Forefront Partners. He is not a co-manager of Forefront Partners. He is not otherwise a party to the Operating Agreement. Instead, Omanoff is a defendant in the State Court Action against whom Forefront Partners could potentially reinstate a $36.7 million judgment. Omanoff's objections amount to an effort to influence a governance decision of a litigation adversary. The Court is aware of no authority giving a litigation defendant standing to object to matters concerning the governance of a litigation plaintiff.

Omanoff asserts that he has standing as a creditor of Reifler's bankruptcy estate. (Omanoff Reply ¶ 19.) But Omanoff filed his proof of claim[9] on April 12, 2022 – over four-and-a-half years after the deadline to file proofs of claim. (*See* ECF Doc. # 61 (notice providing that the deadline to file proofs of claim was September 15, 2017).) Omanoff would only be entitled to receive a distribution *after* the full payment of timely filed claims. *See* 11 U.S.C. § 726(a)(2)-(3) (providing that late-filed claims get paid after timely-filed claims). Creditors holding claims *in excess of $77 million* timely filed proofs of claim against the Reifler bankruptcy estate. (*See* Claims Register.) Thus, the possibility of Omanoff receiving a distribution as a creditor is beyond remote.

---

9 *See* Claim No. 15-1.

Even if Omanoff had a viable pecuniary interest as a creditor in this bankruptcy case, he would still lack standing. This Court's decision in *In re Bozel S.A.* is instructive on this point. 434 B.R. 86 (Bankr. S.D.N.Y. 2010). There, the following two parties commenced an adversary proceeding to enjoin the debtor's managing director from continuing to control the debtor: (i) the liquidator of the entity that owned 100% of the debtor's stock ("Liquidator"), and (ii) the debtor's largest secured creditor ("Crastvell"). Defendants moved for dismissal arguing, among other things, that the plaintiffs lacked standing. The Court ruled that the Liquidator had standing to pursue the action as the debtor's sole shareholder. *Id.* at 94-95. Crastvell, on the other hand, lacked standing even though it was the debtor's largest creditor:

> Crastvell is not an equity holder of the Debtor. Its status as a creditor, even as the largest single creditor of the Debtor, does not give it the right to bring claims related to the internal governance of the Debtor corporation as that is a right of an equity holder.
>
> . . .
>
> It is true that Crastvell's interests may be impacted by an unfavorable ruling on the corporate governance issue. But such interest alone is not enough to give Crastvell standing.
>
> . . .
>
> Since Crastvell is not a shareholder of Debtor, it does not have an independent legal right to a claim based on the internal corporate governance of the Debtor.

*Id.* at 96.[10]

---

[10] In *Bozel*, the Court acknowledged Crastvell's right to intervene under Federal Civil Rule 24, which was made applicable to the adversary proceeding under Federal Bankruptcy Rule 7024. *Bozel*, 434 B.R. at 95 n.12. Bankruptcy Rule 7024 is not applicable to the instant dispute as issues regarding the Stipulation

The Court agrees with the ruling in *Bozel*. Omanoff's status as a creditor in this bankruptcy case does not provide him with standing to object to matters concerning the governance of Forefront Partners. In fact, Omanoff's case for standing is weaker than Crastvell's because Omanoff's late-filed claim (i) is subordinated pursuant to 11 U.S.C. § 726(a)(3), and (ii) is not asserted against the entity whose internal governance is at issue.

Delaware law is in accord. Forefront Partners owes no duties to Omanoff. 6 Del. C. § 18-1101(c) (an LLC operating agreement may expand or restrict duties owed to (i) the LLC, (ii) other members or managers, or (iii) another person that is a party to or is otherwise bound by the LLC agreement); *Smith v. Scott*, No. 2020-0263-JRS, 2021 WL 1592463, at *10 n.115 (Del. Ch. Apr. 23, 2021) ("[I]f Smith is not a member of the relevant LLC, then that LLC does not owe fiduciary duties to him.") (citation omitted). Further, Omanoff lacks standing to commence an action to challenge the appointment, or seek removal, of the Manager. 6 Del. C. § 18-110(a) (providing that only a member or manager may bring such action); *see also Lehr v. Aspen Power Partners LLC*, No. 2025-0116-LWW, 2026 WL 865854, at *5 n. 71 (Del. Ch. Mar. 30, 2026) ("Standing under Section 18-110 strictly requires a plaintiff to be an actual member or manager of the specific LLC whose governance is at issue."). Delaware law does not give Omanoff input into the governance decisions of Forefront Partners.

For these reasons, Omanoff lacks standing to object to the Stipulation.

---

are not being raised in an adversary proceeding. *See* FED. R. BANKR. P. 9014(c) (omitting Federal Bankruptcy Rule 7024 from rules applicable in contested matters).

### 2. Omanoff's Objections Lack Merit

Alternatively, Omanoff's objections must be overruled because they fail on the merits. First, Omanoff argues that the Stipulation is procedurally defective because it was submitted via notice of presentment. (Omanoff Brief ¶¶ 2-4, 13-17.) Notices of presentment are governed by Local Bankruptcy Rule 9013-2, which states:

> *Use*. Unless the Court orders otherwise, where it is anticipated that a motion, application, or objection of a type set forth below will be uncontested, the motion, application, or objection may be made upon notice of presentment . . . .

Bankr. S.D.N.Y. R. 9013-2(a)(1). Omanoff complains that approval of the Stipulation is not among the matters that may be submitted via notice of presentment. *See* Bankr. S.D.N.Y. R. 9013-2(a)(1)(A)-(I) (listing the matters that may be submitted via notice of presentment). But the proviso "[u]nless the Court orders otherwise" empowers the Court to allow other matters to be heard by notice of presentment. *See* Comment to Bankr. S.D.N.Y. R. 9013-2 ("The Court nevertheless has discretion under Local Bankruptcy Rule 9013-2(a) to permit the presentment procedure to be used with respect to additional types of motions or applications in an individual case.").

Here, the Court approved the submission of the Stipulation via notice of presentment. At the July 14, 2026 status conference, the Court acknowledged the Trustee's filing of the notice of presentment and stated that it would schedule a hearing if a timely objection was filed. (Transcript of July 14, 2026 Hr'g at 3:22-4:12 (ECF Doc. # 494).) After Omanoff filed his objection, the Court entered the Scheduling Order, which provided for full briefing of the issue and oral argument. (*See* Scheduling Order.) Thus, the Court exercised its discretion to approve the procedure elected by the Trustee as supplemented by the Scheduling Order.

Second, Omanoff implies that the Stipulation is a disguised application to retain an estate professional and should be subject to the requirements under 11 U.S.C. § 327 and Federal Bankruptcy Rule 2014. (Omanoff Brief ¶¶ 18-22.) This assertion is meritless. The Trustee is not retaining Roof to render professional services for the bankruptcy estate. Rather, the Trustee is exercising the estate's membership interest to appoint management for a non-debtor entity. Section 327 and Bankruptcy Rule 2014 are inapplicable here.

Third, Omanoff asserts that Roof has a disqualifying conflict of interest. (*Id.* ¶¶ 23-32.) Some context is helpful to frame this argument. Roof is currently the Special Deputy Receiver for NC Mutual, and NC Mutual has asserted a $10.4 million claim against Forefront Partners. Forefront Partners would presumably pay its creditors before the surplus is paid to the Trustee on account of her membership interest. Thus, Omanoff argues that Roof's position as receiver of NC Mutual constitutes a disqualifying conflict of interest.

This argument lacks merit. Initially, the issue is not ripe. Forefront Partners must first reinstate the State Court Judgment and obtain recovery from Omanoff in the State Court Action before it can make determinations about distributions of the litigation proceeds. At that point, parties with standing could potentially present arguments about how the litigation proceeds should be distributed. These events have not occurred.

Further, as stated above, Delaware LLC law gives maximum effect to the principle of freedom of contract and allows an operating agreement to restrict or eliminate a manager's duties, including fiduciary duties. 6 Del. C. § 18-1101(b), (c). Here, the Operating Agreement expressly permits transactions where a manager has a conflict of

interest. Section 6.11(a) provides that "[n]o transaction with [Forefront Partners] shall be voidable solely because a Member or Manager, or their respective affiliates, has a direct or indirect interest in the transaction." (Operating Agreement § 6.11(a).) Likewise, section 6.11(b) provides that "[a] Member or Manager does not violate a duty or obligation to [Forefront Partners] merely because such Person's conduct furthers such Person's own interest." (*Id.* § 6.11(b).) Therefore, Omanoff's identification of a speculative, future conflict of interest does not defeat Roof's appointment.[11]

Fourth, Omanoff argues that the Trustee may not appoint a Manager for Forefront Partners until she revives the entity. (Omanoff Brief ¶¶ 8, 34-41.) Omanoff relies on the *Talking Capital* decision wherein the Appellate Division ruled that Reifler ceased to be Forefront Partners' manager upon his bankruptcy filing, and subsequent written consents he executed on behalf of Forefront Partners were therefore invalid. 233 A.D.3d at 519. But, whereas Reifler lacked the authority to act on behalf of Forefront Partners, the Appellate Division explained that "the bankruptcy trustee or [her] designees" did have such authority. *Id.* Pursuant to the Stipulation, Roof is the Trustee's designee. To the extent Forefront Partners requires revival, such matters may

[11] Omanoff wrongly accuses NC Mutual of fraud. NC Mutual's $10.4 million claim against Forefront Partners is based on a confession of judgment signed by Reifler in 2017. *See Decision Denying Abandonment* at 4-5. Under Omanoff's version, NC Mutual "fraudulently procured" this judgment despite knowing that Reifler had lost his authority to act for Forefront Partners by filing a bankruptcy petition earlier that year. (Omanoff Reply ¶ 17.) But the issue of whether Reifler had authority to act on behalf of Forefront Partners was not resolved until the Appellate Division ruled on the issue in December 2024. *See Talking Capital*, 233 A.D. at 519 (ruling that Reifler had lost his manager title by filing for bankruptcy). Prior to December 2024, whether Reifler retained his manager status was uncertain. In fact, the District Court ruled in August 2023 that Reifler did retain such status. *See Omanoff v. Reifler* (*In re Reifler*), No. 22-CV-10201 (CS), 2023 WL 5510233, at *9 (S.D.N.Y. Aug. 25, 2023) (Reifler's powers as manager did not pass to the Trustee); *see also Decision Denying Abandonment* at 15 n.10 (noting the discrepancy between the Appellate Division's and District Court's rulings on Reifler's manager status). Omanoff's assertion that NC Mutual knew the answer to this legal issue in 2017 and "fraudulently procured" a judgment is baseless.

be addressed by Roof. *See* 6 Del. C. § 18-1109(c) (upon filing a certificate of revival, a limited liability company "shall be revived with the same force and effect as if the certificate of formation of the limited liability company had not been canceled . . ."); *see also id.* ("revival shall validate all contracts, acts, matters and things made, done and performed by the limited liability company . . . or by the members, managers, employees and agents of the limited liability company . . . during the time when the certificate of formation . . . was canceled . . . with the same force and effect and to all intents and purposes as if the certificate of formation . . . had remained in full force and effect"); *see also* 6 Del. C. § 18-106(e) (permitting person with authority to ratify any act or transactions which were "void or voidable when taken").

Fifth, Omanoff argues that this Court lacks the authority to designate a Manager for Forefront Partners. (Omanoff Brief ¶¶ 42-45.) Omanoff relies on *In re Futterman*, in which this Court denied a motion for the appointment of an independent manager, liquidator, or receiver for a non-debtor entity. 584 B.R. 609, 623 (Bankr. S.D.N.Y. 2018). The Court reasoned that the Bankruptcy Code did not empower the Court to "designate the persons or entities who will exercise control" over such non-debtor entities. *Id.* Omanoff misconstrues the Stipulation. The Trustee is not asking the Court to designate a Manager for Forefront Partners. The Appellate Division, the District Court, and this Court have already recognized the Trustee's authority to exercise that power, and she has done so by entering into the Stipulation with Roof. Instead, the Stipulation simply asks the Court to so-order the terms of the appointment, which the Court has authority to do. *See K.G. IM, LLC*, 620 B.R. at 481 (court's approval, by stipulation and order, of delegation of management authority under operating agreement and state law was permissible).

Sixth, Omanoff asserts that the Trustee is improperly abandoning the Forefront Partners membership interest by entering into the Stipulation. (Omanoff Brief ¶¶ 46-50.) Not so. The Trustee appointed Roof as Manager to pursue the State Court Action and potentially obtain recoveries on account of the Forefront Partners membership interest. The membership interest, and the right to receive distributions on account of such interest, remain property of the bankruptcy estate. (Stipulation ¶ 4.)

Seventh, Omanoff attacks paragraph 3 of the Stipulation. (Omanoff Brief ¶¶ 52-53.) Under that paragraph, NC Mutual agrees to pay any fees and costs payable to the Manager as well as any professionals retained by the Manager. (Stipulation ¶ 3.) It then states that neither the Manager nor NC Mutual would bear responsibility for any fees, expenses or costs incurred by, or assessed against, Forefront Partners. (*Id.*) It is the latter portion that Omanoff takes issue with. However, the Operating Agreement makes clear that the "debts, obligations and liabilities of [Forefront Partners], whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of [Forefront Partners] . . . ." (Operating Agreement § 12.1.) Thus, paragraph 3 of the Stipulation is consistent with the Operating Agreement.

Eighth, Omanoff argues that the provision in the Stipulation limiting the Manager's liability is improper. (Omanoff Brief ¶ 56.) Specifically, the Stipulation provides that the Manager "shall not be liable for decisions made in good faith in accordance with the terms of [the Operating Agreement] and applicable law." (Stipulation ¶ 7.) This argument lacks merit because Delaware law and the Operating Agreement already provide for this limitation. Under Delaware law, an LLC's operating agreement may restrict or eliminate a manager's fiduciary duties except for the implied contractual covenant of good faith and fair dealing (*see* 6 Del. C. § 18-1101(c)), and limit

or eliminate a manager's liabilities arising from breach of such duties (*see* 6 Del. C. § 18-1101(e)). The Operating Agreement, in turn, provides that "no Manager has a fiduciary duty or obligation to [Forefront Partners] or to any Member, all of which are hereby specifically disclaimed." (Operating Agreement § 6.1(b).) Further, the Operating Agreement provides that no Manager shall be liable for any act or omission "including by reason of any breach of any fiduciary duty" unless "such act or omission (i) is attributable to such Person's fraud, bad faith, willful misconduct or gross negligence or (ii) was clearly outside the scope of authority granted to such Person under this [Operating Agreement]." (Operating Agreement § 12.6.) Thus, the limitation of the Manager's liability set forth in paragraph 7 of the Stipulation is consistent with Delaware law and the Operating Agreement. In fact, the final sentence of paragraph 7 makes clear that the intent of the Stipulation is to remain within the liability framework of Delaware law and the Operating Agreement. (Stipulation ¶ 7 ("The Manager shall be liable only to the extent set forth in [the Operating Agreement] and applicable law.").)

Ninth, Omanoff takes issue (*see* Omanoff Brief ¶ 59) with paragraph 9 of the Stipulation, which allows Roof to withdraw as Manager "with or without cause upon application" and approval of this Court. (Stipulation ¶ 9.) But the Operating Agreement already allows a Manager to withdraw upon "written notice of resignation as a Manager . . . ." (Operating Agreement § 6.3.) Thus, paragraph 9 of the Stipulation is consistent with the Operating Agreement.

Tenth, Omanoff argues that quarterly status reports prepared pursuant to paragraph 6 of the Stipulation should be publicly filed on the docket. (Omanoff Brief ¶ 65(g).) But Omanoff provides no authority that would require the public filing of an

internal report of Forefront Partners, which could potentially contain confidential information.

Eleventh, Omanoff complains that Roof should not be permitted to retain David Bowles, Esq. as Forefront Partners' attorney in the State Court Action. (*Id.* ¶¶ 18, 28.) This issue is not before the Court, and any issues pertaining to Forefront Partners' choice of counsel in the State Court Action is best left for resolution by the State Court.

Twelfth, Omanoff takes issue with paragraph 13 of the Stipulation, which provides that this Court "retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation and Agreed Order." (Stipulation ¶ 13.) As an initial matter, this argument was made for the first time in Omanoff's reply brief (*see* Omanoff Reply ¶¶ 108-111) and does not merit consideration on that basis. *Anghel v. Sebelius*, 912 F. Supp. 2d 4, 14 (E.D.N.Y. 2012) ("It is well settled in the Second Circuit that a party may not raise an argument for the first time in his reply brief.") (quotation omitted) (listing supporting authorities). In any event, this Court "plainly" retains jurisdiction "to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).

The circumstances here favor this Court's retention of "exclusive" jurisdiction. Paragraph 13 of the Stipulation was discussed during the Hearing. One of the attorneys for Omanoff concluded his remarks by strongly indicating that an adverse ruling from this Court will result in his filing a new action covering the same matters in Delaware state court. Omanoff was given a full and fair opportunity to raise any and all arguments opposing the Stipulation in the instant proceeding. Allowing Omanoff to file yet another action in a second forum would needlessly multiply proceedings, increase costs for the other parties, and waste judicial resources. These issues are compounded

by the fact that, as set forth *supra*, Omanoff lacks standing under Delaware law to challenge the appointment of the Manager. Under these circumstances, the Court concludes that it is appropriate to retain *exclusive* jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of the Stipulation. Omanoff and his counsel are hereby notified that the commencement of an action or proceeding that violates paragraph 13 of the Stipulation could result in the imposition of civil contempt sanctions pursuant to this Court's inherent sanctioning authority as supplemented by 11 U.S.C. § 105.

## CONCLUSION

For the reasons stated, the Stipulation is **APPROVED**, and Omanoff's objections are **OVERRULED**. Arguments made by the parties but not specifically addressed herein have been considered by the Court and are rejected or have been rendered moot by the Court's ruling. The Court will so-order the Stipulation and docket it separately.

**/s/ Kyu Y. Paek**

**Dated: September 18, 2026**
**Poughkeepsie, New York**

**Hon. Kyu Y. Paek**
**U.S. Bankruptcy Judge**